IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN HOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 5744 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| TISHMAN SPEYER PROPERTIES, L.P., and | ) | |
| LENNY SCIASCIA, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lauren Hobson has filed a five-count second amended complaint against her

previous employer, Tishman Speyer Properties, L.P., ("Tishman Speyer"), and her direct

supervisor, Lenny Sciascia ("Sciascia"), in his individual capacity. The complaint alleges sexual

harassment and gender discrimination by Tishman Speyer in violation of plaintiff's rights under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. (Count I); retaliation by

Tishman Speyer in violation of plaintiff's rights under Title VII of the Civil Rights Act of 1964

(Count II); common-law assault and battery by Tishman Speyer and Sciascia (Count III);

common-law intentional infliction of emotional distress ("IIED") by Tishman Speyer and

Sciascia (Count IV); and retaliatory discharge by Tishman Speyer in violation of public policy

under Illinois law (Count V).[1] Tishman Speyer has moved to dismiss Counts III through V

under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below,

---

[1]Sciascia had not been served at the time of the filing of the instant motion. He has since
appeared and has filed a motion to dismiss Counts III and IV. That motion is set for presentment
on July 8, 2008.

Tishman Speyer's motion to dismiss is denied as to Counts III and IV, and granted as to Count V.

**FACTS**[2]

Tishman Speyer is a Delaware limited partnership that manages dozens of buildings in cities throughout the world, including Chicago, Illinois. From around January 31, 2005, to December 9, 2005, Tishman Speyer employed plaintiff. The complaint does not state her position. In the fall of that year, Tishman Speyer transferred plaintiff to a building it managed at 55 East Monroe in Chicago. Sciascia was the supervisor of this building and became plaintiff's direct supervisor. Plaintiff alleges Sciascia sexually harassed her by making lewd and offensive comments, pulled on her ponytail and touched her hair against her will, and engaged in other conduct that the complaint alleges created a hostile work environment. Among her numerous allegations, plaintiff states that Sciascia: repeatedly commented on plaintiff's appearance and that of other female employees; made jokes of a sexual nature related to plaintiff's status as a newlywed; commented about her weight in a negative fashion; often questioned plaintiff about whether her underwear was matching; and told her she was "emotionally unstable," a "stupid little girl," "weird," and "insecure." Plaintiff did not invite or welcome any of these comments. When she complained to Sciascia about his behavior, he threatened her with termination.

On December 7, 2005, plaintiff contacted Tishman Speyer's human resources department to report the hostile work environment and sexual harassment to which she was being subjected. The following day, on December 8, 2005, Sciascia confronted and challenged her about the

---

[2] For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. ;326;326 Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

report she had made.  In a subsequent meeting that day with Sciascia and his supervisor, Michael

Norton, plaintiff was presented with three options: resign effective immediately; agree to transfer

to a different property that would leave her without a job once its pending sale was completed; or

continue what Sciascia or Norton called her "bad date" with Tishman Speyer.  Plaintiff

interpreted the latter option to be a metaphor for her employment relationship with Tishman

Speyer.  When she returned to work December 9, 2005, and before being given an opportunity to

announce which option she had chosen, plaintiff was terminated.

## DISCUSSION

Tishman Speyer has moved to dismiss Counts III-V of plaintiff's second amended

complaint for their failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The purpose of a Rule

12(b)(6) motion is to test the sufficiency of a complaint, not decide the merits.  Gibson v. City of

Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  Federal notice pleading "requires only a short

and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v.

Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, __ U.S.

__, 127 S.Ct. 1955 (2007)).  The court must accept all well-pleaded factual allegations in the

complaint as true and draw all reasonable inferences in the light most favorable to plaintiff.

Moranski v. Gen. Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005).  Dismissal under Fed. R.

Civ. P. 12(b)(6) is appropriate if plaintiff's factual allegations are not sufficient enough to raise a

right to relief above the speculative level.  Bell Atlantic Corp., 127 S.Ct. at 1965.

**Statute of Limitations**

As a preliminary matter, this court rejects Tishman Speyer's argument that plaintiff's

state law assault and battery and IIED claims are time-barred.  On December 3, 2007, the court

dismissed plaintiff's Title VII claims without prejudice because she had not yet received a right-to-sue letter from the Equal Employment Opportunity Commission, a prerequisite to suit in this court under Title VII, and declined supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). After plaintiff obtained the right-to-sue letter, she re-filed the complaint and again included the state law claims. By this point, more than two years had passed since she had stopped working at Tishman Speyer. Given that both the assault and battery and IIED claims have a two-year statute of limitations, Tishman Speyer argues these claims are now time-barred, citing Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000), which holds that, "a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed." Elmore, however, was not referring to a dismissal under § 1367, and the statute itself explicitly addresses how tolling should be handled ("the period of limitations . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period). 28 U.S.C. § 1367(d). Thus, plaintiff's suit was tolled from October 10, 2007 – the date of filing – to December 3, 2007 – the date of dismissal, plus an additional 30 days. Although plaintiff did not re-file until February 5, 2008, she still fell well within the statute of limitations thanks to the earlier tolling. Tishman Speyer's motion to dismiss on these grounds is therefore denied.

**Count III – Assault and Battery**

Tishman Speyer argues that the assault and battery claims are barred by the exclusivity provision of the Illinois Workers' Compensation Act ("IWCA"). Under the statute, "no common law or statutory right to recover damages from the employer. . . . other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act." 820

ILCS 305/5(a). The parties do not dispute that plaintiff is covered by the IWCA. The Act also states, "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer . . . . for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act." 820 ILCS 305/11. Thus, as explained in Meerbrey v. Marshall Field & Co., 139 Ill. 2d 455, 463 (Ill. 1990) (quoting Collier v. Wagner Castings Co., 81 Ill. 2d 229, 237 (Ill. 1980)):

> These sections bar an employee from bringing a common law cause of action against his or her employer unless the employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act.

The first exception to the exclusivity bar is relevant here. It is well settled under Illinois law that the term "accidental" in the Act is not "a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens." Id. at 463. In other words, although Sciascia intentionally committed his acts of sexual harassment, these acts ordinarily would be considered "accidental" because plaintiff did not foresee them. As stated in Meerbrey, however, if the employer or its alter ego intentionally inflicts the injuries upon an employee or the employer commands or expressly authorizes the injuries, the injury is not considered accidental and the claim will not be barred. Id. at 464. The rationale behind this rule is that an employer, or an employee acting as its alter ego, should not be permitted to commit an injury, then claim it was "accidental" under the exclusive provisions of the Act, when he himself committed the act. Id. The question is thus whether Sciascia could be considered as acting as Tishman Speyer's alter ego.

5

Tishman Speyer points out that plaintiff does not allege in her complaint that Sciascia represented the alter ego of Tishman Speyer, and further describes Sciascia as a "low-level" supervisor of one of Tishman Speyer's dozens of properties around the world. As such, Tishman Speyer argues that the assault and battery claim against it is based on nothing more than a garden-variety respondeat superior theory. If Tishman Speyer is correct, the claims are barred, because "Collier implicitly decided that the Act's exclusivity provisions bar employees from bringing common law actions against their employers based solely upon the doctrine of respondeat superior." Id. at 465.

Plaintiff objects to Tishman Speyer's characterization of the complaint. First, she argues she did not simply allege respondeat superior liability, but instead made clear that it was supervisors and management who committed the acts that form the basis of her complaint. Second, she argues that although the complaint did not state with specificity the positions Sciascia and other supervisors held in Tishman Speyer, she nonetheless met her pleading burden because the Federal Rules of Civil Procedure require only a "short and plain statement" of the claim sufficient to put Tishman Speyer on notice.

The court agrees with plaintiff. To determine whether a person who commits an intentional tort can be his or her employer's alter ego, courts generally consider the person's ability to make decisions, set policy, and speak on behalf of the employer. See, e.g., Crissman v. Healthco Intern., Inc., 1992 WL 223820, at *8 (N.D. Ill. Sept. 2, 1992). Since no record has been developed at this point, the court cannot determine whether Sciascia was acting as Tishman Speyer's alter ego with respect to plaintiff. But reading the complaint liberally, as this court

6

must do, plaintiff has alleged sufficient facts – albeit just barely – to support the inference that Sciascia could be Tishman Speyer's alter ego.

Plaintiff alleges Sciascia was the supervisor of a building managed by Tishman Speyer, acted as her direct supervisor, and participated in the discussion about her employment future. These allegations suggest Sciascia possessed at least some authority to make decisions. Whether he had sufficient authority to be considered Tishman Speyer's alter ego for purposes of the IWCA exemption must be determined at a later stage after the record has been developed. See Bartoli v. Applebee's Restaurant, 2001 WL 40798 (N.D. Ill Jan. 17, 2001) (plaintiff's allegation that restaurant manager participated in and encouraged harassment was sufficient to avoid dismissal on the basis of preemption by the IWCA); Watkins v. Woodlawn Community Development Corp., 2006 WL 218163 (N.D. Ill. Jan 25, 2006) (denying motion to dismiss because, among other reasons, plaintiff might be able to prove her supervisor was acting as defendant's alter ego). For now, plaintiff's allegations are sufficient to survive the motion to dismiss the assault and battery claim. Tishman Speyer's motion to dismiss Count III is therefore denied.

**Count IV – Intentional Infliction of Emotional Distress**

For the reasons discussed above, the IWCA also does not bar plaintiff's intentional infliction of emotional distress claim. Tishman Speyer argues in the alternative that the Illinois Human Rights Act ("IHRA") preempts this claim. The IHRA is the exclusive remedy for the redress of civil rights violations under Illinois law. 775 ILCS 5/8-111(D) ( "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act"). Under the statute, sexual harassment by any

"employer, employee, [or] agent of any employer" is a civil rights violation.  775 ILCS § 5/2-

102(D).  Sexual harassment is defined in the IHRA as:

> [A]ny unwelcome sexual advances or requests for sexual favors or any conduct of
> a sexual nature when (1) submission to such conduct is made either explicitly or
> implicitly a term or condition of an individual's employment, (2) submission to or
> rejection of such conduct by an individual is used as the basis for employment
> decisions affecting such individual, or (3) such conduct has the purpose or effect
> of substantially interfering with an individual's work performance or creating an
> intimidating, hostile or offensive working environment.

775 ILCS § 5/2-101(E).

The IHRA, however, does not serve as an absolute bar to all common-law claims

factually related to the sexual harassment, but rather just those that are "inextricably linked."

This distinction was established in the controlling case of Maksimovic v. Tsogalis, 177 Ill. 2d

511, 519 (Ill. 1997), which stated: "A common law tort claim is not inextricably linked with a

civil rights violation where a plaintiff can establish the necessary elements of the tort

independent of any legal duties created by the Illinois Human Rights Act."  See also Naeem v.

McKesson Drug Co., 444 F.3d 593, 602 (7th Cir. 2006) (stating that "the IHRA does not

preclude courts from exercising jurisdiction over all tort claims factually related to incidents of

sexual harassment").

In Januszewski v. Village of Oak Lawn, 2007 WL 704454, *6 (N.D. Ill. March 5, 2007),

the plaintiff alleged IIED based on, among other charges being subjected to pornographic

material at work; finding that a co-worker ejaculated on her personal belongings and that

plaintiff's supervisors failed to respond to her complaints; being propositioned by a superior

officer and retaliated against for rejecting his advances; and being falsely accused of misconduct.

Id.  This court held in Januszewski that plaintiff's IIED claim was preempted because the facts

underlying the claim were based *solely* on her claims of sexual harassment. Her complaint

contained numerous allegations of outrageous behavior by defendants, but in each instance, the

conduct was characterized by its sexual nature or directly related to earlier instances of sexual

harassment. Although this court did not directly cite Maksimovic, all of plaintiff's claims were

inextricably linked to the IHRA's legal duty to avoid committing sexual harassment.

In contrast, plaintiff in the instant case has alleged some behavior by the Sciascia that is

not "conduct of a sexual nature." Most notably, she alleges that Sciascia pulled on her ponytail

and touched her hair, "thereby causing an assault and battery"; made disparaging remarks about

her weight; and told her that she was "emotionally unstable," "a stupid little girl," "weird," and

"insecure." Therefore, the IIED claim is not inextricably linked to the legal duty to avoid sexual

harassment and not preempted by the IHRA. Whether this behavior can provide the necessary

hook for her IIED claim is another question.

To state a cause of action for IIED under Illinois law, plaintiff must allege three

elements. "First, the conduct involved must be truly extreme and outrageous. Second, the actor

must either *intend* that his conduct inflict severe emotional distress, or know that there is at least

a high probability that his conduct will cause severe emotional distress. Third, the conduct must

in fact cause *severe* emotional distress." McGrath v. Fahey, 126 Ill. 2d 78, 86 (Ill. 1988)

(emphasis in original). In the instant case, plaintiff has alleged sufficient facts with regard to

proving each element – again, just barely – to survive a motion to dismiss.

In Illinois, "conduct is extreme and outrageous when reciting the facts to an average

community member would arouse her resentment against the actor, and lead her to exclaim,

'outrageous!'." Anast v. Commonwealth Apartments, 956 F. Supp. 792, 803 (N.D. Ill. 1997). In

contrast, "mere insults, indignities, threats, annoyances, petty oppressions or trivialities that are part of the costs of complex society" are not extreme and outrageous. Id. Plaintiff alleges Sciascia pulled on her ponytail and touched her hair; made remarks critical of her weight; and called her "emotionally unstable" and "a stupid little girl," among other denigrating comments. In addition, this behavior was not a one-time occurrence; rather, plaintiff alleges that she was subjected to similar harassment on a fairly routine basis. Finally, the fact that Sciascia was plaintiff's supervisor makes it even more likely an average community member would exclaim "outrageous!" upon hearing about his conduct. See Honaker v. Smith, 256 F.3d 477, 491 (7th Cir. 2001) (noting that "courts have found extreme and outrageous behavior to exist in the employer/employee context where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment"). A reasonable jury could find that Sciascia's conduct, if proven to be true, went beyond mere insults or annoyances and was extreme and outrageous.

Plaintiff's complaint also includes sufficient allegations with regard to the remaining elements of the IIED claim. Although the complaint does not allege Sciascia intended to inflict severe emotional distress, or knew that there was a high probability his conduct would do so, this omission is not dispositive. "Courts have generally found this element to be satisfied either when a defendant's actions, by their very nature, were likely to cause severe distress or when the defendant knew that a plaintiff was particularly susceptible to such distress and that, because of this susceptibility, the defendant's actions were likely to cause it to occur." Id. at 494. By their very nature, the actions allegedly committed by Sciascia could be seen as likely to cause severe distress.

Finally, plaintiff has alleged this behavior did, in fact, cause her such pain, stating in her complaint that she suffered "severe emotional distress and mental anguish." Although she does not provide additional facts to support this allegation, this is unnecessary in a notice-pleading regime. The facts she alleges in describing Sciascia's extreme and outrageous conduct are sufficient to allow this court to draw the conclusion that she could have suffered severe distress and mental anguish. For the above reasons, this court finds that plaintiff's IIED claims are not preempted by the IHRA. As such, Tishman Speyer's motion to dismiss Count IV is denied.

## Count V – Retaliatory Discharge

Plaintiff's common law retaliatory discharge claim is, however, preempted by the Illinois Human Rights Act. As noted above, the IHRA is the exclusive remedy for the redress of civil rights violations under Illinois law. 775 ILCS 5/8-111(D). The Act states that it is a civil rights violation to "retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be . . . sexual harassment in employment . . . or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." 775 ILCS 5/6-101(A).

Plaintiff, in her response brief, did not address Tishman Speyer's contention that the IHRA preempted the retaliatory discharge claim. Whether this was an inadvertent omission, or a concession to Tishman Speyer's argument, is irrelevant because the court concludes that the IHRA preempts the claim. Plaintiff alleges in her complaint that Tishman Speyer retaliated against her because she "filed a complaint" of sexual harassment. Under the plain language of the Act, this conduct qualifies as a civil rights violation and triggers the exclusivity jurisdictional bar. While plaintiff is correct that such retaliation frustrates the mandated public policy of

11

Illinois, the Act establishes the remedies available to her, and they do not include the pursuit of a common law claim in this court.  See, e.g., Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 193-94 (Ill. App. 1st Dist. 1996) (holding that IHRA preempted retaliatory discharge claim brought by employee who reported sexual harassment and subsequently was fired).  Thus, Tishman Speyer's motion to dismiss this count is granted.

### CONCLUSION

For the reasons discussed above, the court grants Tishman Speyer's motion to dismiss the retaliatory discharge claim against Tishman Speyer (Count V).  The motion to dismiss the assault and battery (Count III) and intentional infliction of emotional distress (Count IV) claims against Tishman Speyer is denied.  Tishman Speyer is directed to answer the remaining counts in the second amended complaint on or before July 15, 2008.

**ENTER:** **June 27, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**

12